MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>JAMES CODY BRYANT, a/k/a MELODY BRYANT,<br>Defendant. | No. MJ26-618-BAT<br><br>RESPONSE IN OPPOSITION TO GOVERNMENT'S MOTION FOR DETENTION AND SUPPORTING MEMORANDUM (DKTS. 8, 10) |

Counsel for James Cody Bryant, who goes by Melody and uses she/her pronouns, respectfully offers this response to the government's memorandum in support of the detention motion, Dkt. 10, which was filed this morning.

## I. BACKGROUND

On February 10, 2026, Jesse Van Rootselaar murdered eight people and injured 27 people in Tumbler Ridge, British Columbia, before killing herself. The victims included Van Rootselaar's mother and half-brother, a teacher, and five students at Tumbler Ridge Secondary School. Investigation revealed Van Rootselaar had shared violent fantasies with others, including ChatGPT, but that no one, including OpenAI, had alerted law enforcement. *See* Dkt. 1 at 29 (Van Rootselaar notes that others could stop her); Mark Follman, "ChatGPT Helped Tumbler Ridge Shooter Focus on Guns, Tactics, and Terror," Mother Jones (Sep. 24, 2026), https://www.motherjones.com/media/2026/09/chatgpt-tumbler-ridge-mass-shooter-openai [https://perma.cc/Z6WT-M79D] (describing tactical advice provided by



**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, WA 98101**
**(206) 553-1100**

ChatGPT). Investigators also determined that Van Rootselaar, who had a long history of mental illness and drug abuse, had briefly communicated by Discord with Ms. Bryant that morning:

**Van Rootselaar:** R you ready with my twitch account pulled up?

**Bryant:** Yeah

**Van Rootselaar:** I'm going now. Fr. Live. I shot them. Fuck.

**Bryant:** Watching now

**Van Rootselaar:** I can't figure out how to start the car help

**Bryant:** Fuck. Stream diwn. Turn the key til it sounds like its going enough then stop. Idk how yo explain it

**Van Rootselaar:** It's push to start

**Bryant:** Button? Hold it a lil maybe??

Dkt. 1 at 39–40. The complaint discloses no evidence that Ms. Bryant knew that Van Rootselaar intended to drive to a school to kill children.

Investigators interviewed Ms. Bryant two days later. She cooperated fully and expressed horror at Van Rootselaar's crimes. Investigators then conducted a second voluntary interview on March 3, 2026, after reviewing a complete copy of the communications between Ms. Bryant and Van Rootselaar from Discord. Then, for seven months, investigators left Ms. Bryant in the community without any restrictions on her movement or access to the internet.

Law enforcement received a warrant for Ms. Bryant's arrest on October 2, 2026, but did not execute the warrant for four days. On October 6, 2026, law enforcement scheduled a third interview with Ms. Bryant, who again made herself available to speak with law enforcement. The FBI arrested Ms. Bryant at her home without incident.

At a press conference later that morning, which had been scheduled with and was attended by members of the Royal Canadian Mounted Police, "[A]cting U.S.



**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, WA 98101**
**(206) 553-1100**

Attorney Neil Floyd . . . . said Bryant had the knowledge and ability to alert law enforcement about Rootselaar's plans, but chose not to." "U.S. resident charged with offering advice, money to Tumbler Ridge killer in months before mass shooting," CBC (Oct. 6, 2026), https://www.cbc.ca/news/canada/british-columbia/livestory/tumbler-ridge-mass-shooting-arrest-9.7371316 [https://perma.cc/6FVR-5FLC]; Press Release, U.S. Attorney's Office, Western District of Washington, Bellingham resident charged with conspiring to commit murder in connection with school shooting in Tumbler Ridge, B.C. (Oct. 6, 2026), https://www.justice.gov/usao-wdwa/pr/bellingham-resident-charged-conspiring-commit-murder-connection-school-shooting [https://perma.cc/V8YE-R8SR]. Law enforcement alleges that Ms. Bryant assisted the murders by offering to view and record a livestream the murders, sending money to buy shoes and attempting to send money to buy a lighter, and providing information about how to get Van Rootselaar's car started that morning. Law enforcement acknowledges that Ms. Bryant repeatedly tried to dissuade Van Rootselaar from committing the crime and expressed horror at the prospect of a school shooting. Dkt. 1 at 31–38.

Ms. Bryant has no criminal history and there is no evidence that she has ever personally committed an act of violence. There is no evidence that she is in contact with anyone else planning an act of violence. Although Ms. Bryant, age 30, briefly saw a psychologist while in high school and has taken medication for panic attacks, there is no evidence she suffers from any relevant mental illness. So far as the government has disclosed, there is no evidence she has expressed a thought of harming herself in the last fourteen months. There is no evidence she *ever* has made plans to hurt herself. Pretrial Service's investigation indicates Ms. Bryant has a stable residence, close ties to the community, and long-term employment. Ms. Bryant has no connection to any other country, and no means with which to flee.



**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, WA 98101**
**(206) 553-1100**

## II. ARGUMENT

18 U.S.C. § 3142(e) creates a rebuttable presumption of detention for defendants charged with certain dangerous crimes. That presumption, which applies here, places on the defendant the burden of producing "some evidence" in support of release. *United States v. Dillon*, 938 F.2d 1412, 1416 (1st Cir. 1991). "The burden of production is not a heavy one to meet." *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986). If the defendant produces *any* credible evidence as to one of the 3142(g) factors—for example, "family and employment status, community ties, lack of criminal record"—the burden shifts to the prosecutor to prove, by clear and convincing evidence, that no condition or combination of conditions could reasonably secure the safety of the community. *See* John L. Weinberg, Federal Bail and Detention Handbook 2018 [6.11], PLI Press (New York, 2018). Furthermore, "[a] defendant cannot be detained as dangerous under § 3142(e), *even if the presumption is not rebutted*, unless a finding is made that no release conditions will reasonably assure the safety of the community." *Dominguez*, 783 F.2d at 707 (internal citations omitted and emphasis added); 18 U.S.C. § 3142(c)(1)(B).

Here, because Ms. Bryant produced credible evidence that rebuts the presumption, and because the government cannot meet its burden to show there are no conditions or combination of conditions that would reasonably assure Ms. Bryant's appearance or protect the community, the Court should order her release pursuant to appropriate conditions, which may include home confinement, mental health treatment if an assessment determines it is appropriate, and restrictions on her use of digital devices.

### A. Ms. Bryant has produced "some evidence" rebutting the rebuttable presumption of detention.

As noted above, the Bail Reform Act does not require Ms. Bryant to show that she is innocent or to produce evidence relating to each of the § 3142(g) factors in order



**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, WA 98101**
**(206) 553-1100**

to rebut the presumption of dangerousness at § 3142(e). Instead, she need only produce evidence relating to any one of the factors listed in § 3142(g) including marital, family, and employment status, community ties, or lack of criminal record.

Here, however, Ms. Bryant has presented evidence, including through the Pretrial Services Report, related to each of the § 3142(g) factors, any one of which would be sufficient to rebut the presumption of detention. It is undisputed that she has a stable residence, no criminal history, employment history, and strong community ties. Ms. Bryant also voluntarily met with investigators on at least three occasions, including the day of her arrest. By any measure, this is sufficient to satisfy Ms. Bryant's burden to produce "some credible evidence" favoring release.

**B. The government doesn't meet its burden.**

Because Ms. Bryant has rebutted the presumption of detention, the government bears the burden of persuasion to show by clear and convincing evidence that no combination of conditions would "reasonably assure" the safety of the community. Release conditions need only provide "reasonable assurance"; it is reversible error to detain a defendant in order to "guarantee" community safety. *United States v. Orta*, 760 F.2d 887, 891 (8th Cir. 1985). Further, "[t]o give effect to the principle that doubts regarding the propriety of release be resolved in favor of the defendant, the court is to rule against detention in close cases." *United States v. Chen*, 820 F. Supp. 1205, 1208 (N.D. Cal. June 18, 1992) (*citing United States v. Motamedi*, 767 F.2d 1403, 1405–06 (9th Cir. 1985)). "Only in rare circumstances should release be denied." *United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991).

The Court evaluates the government's argument for detention with reference to four factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including the person's character, physical and mental condition, family and community



**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, WA 98101**
**(206) 553-1100**

ties, employment, financial resources, past criminal conduct, and history relating to drug or alcohol abuse; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008).

**1. Nature and seriousness of the offense.**

The government has charged Ms. Bryant by complaint with a horrifying crime that carries an extremely high sentence.[1] For purposes of this bond determination, however, the Court may not assume Ms. Bryant's guilt. *See* 18 U.S.C. § 3142(j). Furthermore, even under the government's theory, there is no evidence that Ms. Bryant initiated the planning or engaged in any violence. There is no reason to suspect that Ms. Bryant has chatted, or could chat, with another person planning another horrifying crime. Indeed, if that danger were real, the government would not have left Ms. Bryant in the community for seven months before arresting her.

**2. The weight of the evidence**

The strength of the evidence is hard to assess. Although the government represents that it has reviewed "voluminous" Discord messages since it received them last February, those have not been made public or produced to the defense.

Preliminarily, however, there is reason to doubt the government's legal theory, which requires Ms. Bryant agree with and intend to further Van Rootselaar's terrible crimes. *See* 18 U.S.C. § 956(a)(1). The complaint acknowledges that Ms. Bryant repeatedly tried to dissuade Van Rootselaar from committing mass murder. She said that she would "snitch" if she knew that Van Rootselaar was planning to kill high school students. *See* Dkt. 1 at 30–31. As the absence of criminal charges against ChatGPT demonstrates, refusing to prevent another person from committing a crime

[1] Both the guideline range and the maximum penalty are life imprisonment. There is no minimum penalty. If Ms. Bryant pleaded guilty as charged, her guideline range could be reduced to about 30 years.



**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, WA 98101**
**(206) 553-1100**

does not establish agreement with that conduct. And for better or worse, the First Amendment protects awful speech, even when it incites non-imminent violence. *See Brandenburg v. Ohio*, 395 U.S. 444 (1969). Finally, the government is demonstrably incorrect the Van Rootselaar would not have committed these crimes without Ms. Bryant's offer to stream them is demonstrably incorrect: the shooter murdered her family before contacting Ms. Bryant and committed the remaining murders, knowing the livestream was not operational.

The strength of the evidence is the least important factor. *Motamedi,* 767 F.2d at 1408. Here, the evidence is at least uncertain and, insofar as it suggests multiple potential defenses, may weigh in favor of release.

**3. Ms. Bryant's history and characteristics**

Ms. Bryant's history and characteristics strongly favor release on conditions. Pretrial Services has confirmed her U.S. citizenship, a stable address, long-term employment, ties to the community, and no criminal history. Ms. Bryant does not abuse drugs or alcohol. She has never failed to appear for any hearing and, in fact, voluntarily met with law enforcement three times in the last ten months.

The government argues that Ms. Bryant's mental health justifies her detention. But Ms. Bryant's mental health history is limited to a brief time in counseling in high school and past use of prescribed medication for occasional panic attacks. The government's comprehensive review of Ms. Bryant's electronic communications revealed a single offhand comment regarding suicide made 14 months ago and disclosed no evidence that Ms. Bryant was serious, had made a plan to kill herself, or has expressed any suicidal thought in the eight months since law enforcement first contacted her. To the contrary, the chats reproduced in the complaint reflects a person actively trying to dissuade Van Rootselaar from killing herself by emphasizing the how her death would sadden those who love her.



**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, WA 98101**
**(206) 553-1100**

## IV. THE NATURE AND SERIOUSNESS OF THE DANGER TO ANY PERSON OR THE COMMUNITY THAT WOULD BE POSED BY THE DEFENDANT'S RELEASE.

The government's memorandum argues that Ms. Bryant's chats with Van Rootselaar reflect the danger she would pose if released. But the government has had those chats for eight months and chose not to arrest Ms. Bryant. And law enforcement's initial assessment that Ms. Bryant's access to the internet does not pose a danger to the community has been proven correct. The government's memorandum identifies no evidence she has done or said anything since her chats were discovered to encourage any other act of violence, or that Ms. Bryant has ever communicated with any other person as deeply disturbed as Van Rootselaar.

## V. CONCLUSION

The Court should release Ms. Bryant on conditions, which may include home detention, a mental health assessment, and strict limitations on her use of the internet. As horrible as Van Rootselaar's crimes were, and as cold as many of Ms. Bryant's chats appear, there is no evidence—much less clear and convincing evidence—that she would pose an unmitigable danger to the community

DATED this 13th day of October 2026.

Respectfully submitted,

s/ *Gregory Murphy*
s/ *Dennis Carroll*
Assistant Federal Public Defenders
Attorneys for Melody Bryant

We certify this response contains 2,164 words in compliance with the Local Criminal Rules.



**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, WA 98101**
**(206) 553-1100**